THOMAS *v.* CAMPBELL, WYANT & CANNON FOUNDRY CO.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.
    On appeal from decree dismissing bill to set aside a lump sum settlement agreement approved by the department of labor and industry, review is had *de novo.*

2. WORKMEN'S COMPENSATION—LUMP-SUM SETTLEMENT—FRAUD—EVIDENCE.
    In suit to set aside lump-sum settlement and release of liability under workmen's compensation act by injured employee who claimed fraud in that his physical condition was misrepresented to him, evidence *held,* insufficient to sustain claim of fraud.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted January 4, 1944. (Docket No. 17, Calendar No. 42,510.) Decided February 24, 1944.

Bill by Hugh Thomas against Campbell, Wyant & Cannon Foundry Company, a corporation, to set aside a settlement made in a workmen's compensation case. Bill dismissed. Plaintiff appeals. Affirmed.

*William McKinley Bell,* for plaintiff.

*Warner, Norcross & Judd* and *Phil R. Johnson,* for defendant.

BOYLES, J.   This is a bill of complaint to set aside an agreement entered into by plaintiff to accept $400 in full satisfaction of a claim for further compensation, and an accompanying release from further liability. Plaintiff suffered a compensable injury in 1935 while in the employ of the defendant. By an agreement filed with and approved by the department of labor and industry he was paid compensation for his injury. In January, 1937, while receiving compensation he signed and filed with the department a final settlement receipt, which was approved by the department. A year later, represented by an attorney, he filed a petition for further compensation, and by several agreements, approved by the department, was paid further compensation through September 21, 1938, the total amount of all compensation received by him up to that time being $1,536.27. On that date he filed the agreement in question and a petition to redeem liability, stating therein that upon the receipt of $400 additional

"the claim of the plaintiff for compensation will be forever and permanently compromised, adjusted and settled in accordance with 2 Comp. Laws 1929, § 8438, as amended by Act No. 148, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 8438, Stat. Ann. § 17.172), and that payment of $400 shall be forthwith made in accordance with said section and that

upon such payment, the liability of the defendant for compensation payments to the plaintiff shall be redeemed in accordance with said section and plaintiff's right to any further and future compensation shall end."

The department entered an order approving the agreement to redeem liability in the lump sum of $400, plaintiff accepted payment and filed a final receipt and release of defendant from further liability. In 1941 plaintiff filed a bill of complaint in the circuit court for Muskegon county in chancery, in the case now before us, asking the court to set aside the settlement and to hold for naught his release and waiver of liability, on the ground that the settlement and release had been procured by false representations. Issue was joined, and after a hearing the court held that plaintiff had failed to prove that the settlement was entered into as the result of any fraud practiced on plaintiff and entered a decree dismissing the bill of complaint. Plaintiff appeals and we hear the case *de novo*.

The only meritorious question presented is, whether plaintiff was induced to enter into the settlement and sign the receipt, release and waiver, by means of fraud perpetrated on him by the defendant or its insurance carrier. To establish fraud plaintiff relies solely on his own testimony. He offered no other proofs. He testified that on September 21, 1938, a Mr. Uridge (attorney for defendant's insurance carrier) offered him $350 and told him it would be a nice sum in settlement, that he would soon be able to return to work. He (plaintiff) refused the offer; the offer was repeated on September 23d and 24th, and again refused. He testified:

"*Q.* When was the next offer made?
"*A.* The next offer was made on or about the 26th, I believe. Mr. Uridge said that he had got it

up to $400 and he had used his influence to get it up there and that would be all I would be able to get.

"*Q.*   What did you tell him then?

"*A.*   I accepted it.

"*Q.*   Was the doctors present?

"*A.*   The doctors was present.   They thought that would be a nice sum of money for me.

"*Q.*   Did you talk with the doctors about your injuries?

"*A.*   There was nothing for me to say.   The doctor said it was only skin irritation when he dressed the leg.   He said it was all healed but that and I would soon be going back to work."

Plaintiff further testified that the next day, September 27th, plaintiff and Mr. Uridge went to Lansing before the department of labor and industry where he signed the final papers and received the $400.   It was not claimed that he had fully recovered from the injury, but he claims that his condition was misrepresented to him, that it was not true he would soon be able to return to work, that he subsequently became worse and unable to work.

Plaintiff's petition to the department of labor and industry, dated September 21, 1938, agreeing to accept $400 in a lump sum in full settlement, was in part as follows:

"Do not sign this agreement unless you intend to settle your compensation case permanently.

"The above parties represent unto the department of labor and industry, as follows:   *   *   *

"Petitioner has been paid compensation through September 21, 1938, amounting to a total sum of $1,536.27 that petitioner desires to return to his home in Lexington, Mississippi; that petitioner is having his left leg treated by Dr. Colignon and is confident that his sister in Lexington, Mississippi, can entirely cure this leg, and that by being at his home it will generally benefit him; that petitioner

can rent a house and lot in Lexington, Mississippi for approximately $4 per month and can grow sufficient crop to support himself and his children; that petitioner feels that he will be greatly benefited and improved both mentally and physically by obtaining this settlement and thereby permitting him to return to his home; that petitioner can also obtain work as a house man in several families in his home town and will thereby be able to support himself and his three children. * * *

"Wherefore, it is agreed between the parties that the department of labor and industry may enter an order in this cause providing that upon payment of the sum of $400 by the defendant to the plaintiff, the claim of the plaintiff for compensation will be forever and permanently compromised, adjusted and settled. * * *

                    "HUGH THOMAS (Signed)
                              "Plaintiff.

"Dated September 21, 1938.

"The above agreement and petition was personally read by Hugh Thomas * * * in our presence:

"N. W. SCHOLLE, M.D.  (Signed)

"C. BAKER, R.N.  (Signed)"

Caroline Baker, the registered nurse who witnessed the above petition, testified:

"*Q.* Do you remember in 1938, in September, when this discussion arose about his (plaintiff) wanting to leave the State?

"*A.* Yes, I do.

"*Q.* Were you there present on the 13th of September when he talked that over with Mr. Uridge?

"*A.* Yes. I was in the first aid.

"*Q.* Do you remember what was said and who brought it up?

"*A.* As I can recall, Hugh wanted to go home. He said that a relative, or his sister I think it was at that time, he felt could cure him, and that he wanted

to get away at that time. He was dissatisfied all during the course of his treatment.

"*Q.* Did he tell you where he wanted to go?

"*A.* He wanted to go back to his home in Mississippi.

"*Q.* Do you remember the name of the town?

"*A.* Lexington.

"*Q.* You were there when he made that statement?

"*A.* Yes.

"*Q.* Did he bring the matter up or did Mr. Uridge or someone else bring the matter up?

"*A.* I think he was the one that brought it up."

Another witness testified:

"*Q.* On any of those occasions I will ask you whether or not you discussed with him (the plaintiff) anything about his going to his home in Mississippi.

"*A.* He mentioned one day he would like to have his money in one lump sum so that he could purchase a farm somewhere in Mississippi, and he had planned to take his children there; he had a sister there who was going to care for his children, and he wished to go there to settle down, he told me.

"*Q.* He said he wanted to purchase a farm, did he?

"*A.* That is right.

"*Q.* Who brought that conversation up?

"*A.* Mr. Thomas did.

"*Q.* Did you talk with him on other occasions about the same thing thereafter?

"*A.* I told him he would have to see Mr. Uridge about it."

Plaintiff's petition came on for hearing before the department of labor and industry on September 27, 1938. Mr. Uridge testified as to what took place at the hearing, as follows:

"*Q.* Do you recall who it was that sat on that hearing on that commission?

"*A.* I know that Mrs. Garner (commissioner) was there and I believe Mr. Cassin was there. I am sure that Mr. Cassin and Mrs. Garner were there. Whether Mr. Kirkby was present I am not positive about that. He was the third commissioner.

"*Q.* What transpired?

"*A.* At that time when the case was called by Mrs. Garner, Hugh Thomas was sworn, and then Mrs. Garner asked if he had an attorney and he said he did not, and then she asked whether or not I would be permitted to present the facts, and the facts were presented, and then Mr. Thomas was cross-examined by Mrs. Garner as to what he wanted to use the money for and his condition and so forth, and that ended the hearing.

"*Q.* Did he have a full opportunity there at that hearing, so far as you were able to observe, to make any statement that he saw fit in respect to the matter?

"*A.* Yes, sir.

"*Q.* Then Commissioner Garner, when she interrogated him did she go into the matter rather fully?

"*A.* Very thoroughly, as to get going out of the State, going to Lexington, Mississippi, and I recall her inquiring as to the condition of his legs, and I am very confident that I do recall him saying that his sister could cure those legs when he got home, and that he was just fed up with the treatment he had received here, everything had been bad luck for him."

We agree with the circuit judge that plaintiff failed to prove that the settlement and release of liability were procured by fraud. It is outside the issue in the case that plaintiff later found that he had not recovered to the extent expected, at the time the settlement was made. We are convinced that he fully understood that the settlement was final, and the question as to whether his condition was worse than he then believed it to be is not for decision in

this proceeding. The decree must be affirmed, with costs to defendant.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSH-NELL, SHARPE, and REID, JJ., concurred.